United States District Court
Southern District of Texas

**ENTERED**

March 11, 2025

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CYANCO INTERNATIONAL, LLC | § § § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. H-23-3713 |
| MINERALES DE OCCIDENTE, S.A. DE C.V., | § § § | |
| Defendant. | § § | |

## ORDER

Pending before the Court is a reconsideration of the Court's prior order denying defendant's motion for summary judgment (Document No. 25). Having reconsidered the motion, initial and supplemental submissions, and applicable law, the Court determines that the Court's prior order must be vacated, and Defendant's motion for summary judgment should be granted.

## I. BACKGROUND

This is a breach of contract case. Plaintiff Cyanco International, LLC ("Cyanco") is a producer and supplier of sodium cyanide in the gold mining industry. On November 30, 2018, Cyanco entered into a business relationship with Defendant Minerales De Occidente, S.A. DE C.V. (hereinafter "Minosa"), an open pit heap-leach mining company operating in western Honduras. The parties entered into a sales agreement ("the Contract"), under which Minosa agreed to

1

purchase its annual requirement of sodium cyanide from Cyanco through December 31, 2026. As part of their Contract, the parties agreed "to maintain all licenses, permits, authorizations, and registrations required to be held by each Party under applicable Laws for purposes of manufacturing, transporting, using, handling, and disposing of [cyanide]."[1] More specifically, in order to comply with both the terms of the Contract and United States Federal Export Administration Regulations, Cyanco was required to maintain an export license to ship cyanide to Honduras given its volatile chemical nature. *See* 15 C.F.R. 742.2.

The parties do not dispute that Cyanco applied for and obtained a valid export license with a shipping capacity of 8,000 metric tons of sodium cyanide. However, Minosa contends that a Spring 2023 accounting of received cyanide shipments revealed Cyanco had exceeded the 8,000 metric tons permitted under their export license. Minosa further contends that federal regulations prohibited them from continuing to purchase from suppliers who fail to maintain a valid export license.[2] Thus, on March 30, 2023, Minosa gave Cyanco notice that they believed the contract

---

[1] *Defendant's Motion for Summary Judgment*, Document No. 17, Exhibit A-1 at § 12.2 (*The Contract*).

[2] Under 15 C.F.R. § 750.7(f), the authorization to export cyanide is limited to the quantity specified on the license, and the exporter must ensure that its exports do not exceed either the quantity or value stated in the license. The EAR plainly states that "[i]f you have already shipped the full quantity of items approved on your license . . . [n]o further shipment may be made under the license." 15 C.F.R. § 750.11(a).

2

had been materially breached based on Cyanco's failure to maintain a valid export license. On April 19, 2023, Minosa gave Cyanco notice that Minosa was terminating the Contract effective May 19, 2023.

Based on the foregoing, on October 3, 2023, Cyanco filed suit in this Court pursuant to diversity jurisdiction, asserting a single claim for breach of contract, contending that Minosa lacked the proper justification to terminate the contract.[3] On December 28, 2023, Minosa filed its answer seeking a declaratory judgment that Cyanco failed to maintain an export license to ship cyanide as required by the Contract, and as a result, Minosa had the right to terminate the Contract. On March 1, 2024, Minosa filed a motion for summary judgment, which the Court denied on April 22, 2024. The Court now, *sua sponte*, seeks to reconsider the merits of Minosa's summary judgment motion. In doing so, the Court provided notice of its intent to reconsider Minosa's motion at the final pretrial conference, and allowed the parties the opportunity to submit supplemental briefing to aid the Court's

---

[3] In the Complaint, Cyanco sought "compensatory damages in an amount to be proven at trial." *Complaint*, Document No. 1 at 11. In the parties' joint pretrial order, Cyanco sought damages in "an amount exceeding over $10 million." *Joint Pretrial Order*, Document No. 47 at 9. At the final pretrial conference before the Court, Cyanco stated on the record that they are now seeking over $24 million in damages. *See Final Pretrial Conference Hearing*, Document No. 69.

reconsideration of the merits of Minosa's summary judgment motion. Cyanco availed itself of the Court's offer, and Minosa elected to forgo any further briefing.[4]

## II. STANDARD OF REVIEW

The Fifth Circuit has made clear that a district court may reconsider a previously denied summary judgment motion, *sua sponte. See Baig v. McDonald*, 749 Fed. Appx. 238, 241 (5th Cir. 2018) (holding that the district court did not abuse its discretion in granting summary judgment upon reconsideration, *sua sponte*, after having previously denied a summary judgment motion in a perfunctory manner). The Fifth Circuit has further clarified that "[a] trial court has the authority to reconsider and revise a prior ruling 'for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *AIG Specialty Insurance Company v. Agee*, 2025 WL 655069 (5th Cir. 2025) (citing *Austin v. Kroger Tex., L.P.,* 8644 F.3d 326, 336 (5th Cir. 2017)).

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the

---

[4] *See Cyanco's Supplement to its Response in Opposition to Minosa's Motion for Summary Judgment,* Document No. 71.

elements of the causes of action upon which the nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The nonmoving party's bare allegations, standing alone, are insufficient to create a material dispute of fact and defeat a motion for summary judgment. If a reasonable jury could not return a verdict for the nonmoving party, then summary judgment is appropriate. *Liberty Lobby, Inc.*, 477 U.S. at 248. The nonmovant's burden cannot be satisfied by "conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Uncorroborated self-serving testimony cannot prevent summary judgment, especially if the overwhelming documentary evidence supports the opposite scenario. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 294 (5th Cir. 2004). Furthermore, it is not the function of the Court to search the record on the nonmovant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137

n.30 (5th Cir. 1992). Therefore, "[a]lthough we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings but must respond by setting forth specific facts indicating a genuine issue for trial." *Goodson v. City of Corpus Christi*, 202 F.3d 730, 735 (5th Cir. 2000).

III. LAW & ANALYSIS

On March 1, 2024, Minosa moved for summary judgment, contending there was no material question of fact for a jury regarding whether Cyanco breached its contract with Minosa by failing to maintain the required export license. In response, Minosa argued that there was no evidence that Cyanco breached the sales contract, and that there was indisputable evidence that Minosa wrongfully terminated the Contract early. After having provided notice to the parties at the Court's final pretrial conference, the Court will now reconsider the arguments raised by the parties in their respective briefings related to summary judgment, *sua sponte*, in addition to supplemental briefing offered to the parties.[5] Upon reviewing the aforementioned, it becomes clear that Minosa contends Cyanco breached their Contract by failing to

---

[5] *See Defendant's Motion for Summary Judgment*, Document No. 17; *Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment*, Document No. 21; *Defendant's Reply in Support of its Motion for Summary Judgment*, Document No. 24; and *Cyanco's Supplement to its Response in Opposition to Minosa's Motion for Summary Judgment,* Document No. 71.

6

maintain an export license, which rendered Cyanco unable to ship sodium cyanide to Minoa, which in turn, excused Minosa's further performance and permitted Minosa to terminate the Contract. In response, Cyanco argues that it both: (1) maintained the required export license; and (2) timely cured the breach alleged by Minosa.[6]

The parties do not dispute that Cyanco first obtained Export License D1170758 ("the Export License") in 2019, as required by the U.S. Federal Export Administration Regulations ("EAR"). Under the EAR. the authorization to export cyanide is limited to the quantity specified on the license, and the exporter must ensure that its exports do not exceed either the quantity or value stated in the license. *See* 15 C.F.R. § 750.7(f). The EAR explicitly states that "[i]f you have already shipped the full quantity of items approved on your license . . . [n]o further shipment may be made under the license." 15 C.F.R. § 750.11(a). The EAR also offers clear guidance to potential purchasers seeking to acquire goods from an exporter who has reached their respective license limit, by explicitly stating "[n]o person may engage in any transaction or take any other action prohibited by or contrary to . . . the EAR,

---

[6] Cyanco further contends that the term "maintain" was not defined in the Contract or the federal regulations applicable to this matter. For purposes of this matter, the court will adopt the Texas Supreme Court's definition of "maintain" as being "[t]o keep up, preserve, bear the cost of, keep unimpaired, [or] keep in good order." *Big Three Welding Equip. Co. v. Crutcher, Rolfs, Cummings, Inc.*, 229 S.W.2d 600, 603 (Tex. 1950) (citing BLACK'S LAW DICTIONARY, 3d Ed. at 1143).

7

or any order, license or authorization issued thereunder." 15 C.F.R. § 764.2(a).

Furthermore, 15 C.F.R. § 764.2(e) provides that "[n]o person may order, buy, . . .

use, . . . in whole or in part, or conduct negotiations to facilitate such activities . . .

with knowledge that a violation of ECRA, the EAR, or any order, license, or

authorization issued thereunder, has occurred, is about to occur, or is intended to

occur in connection with the item."

Here, the parties do not dispute that Cyanco's Export License permitted

Cyanco to ship up to 8,000 metric tons of sodium cyanide. Yet, the record is clear

that Cyanco exported a total of 10,640 metric tons of sodium cyanide to Minosa

under that license.[7] Minosa contends that Cyanco did not have a valid license to

export the additional 2,640 metric tons of sodium cyanide, and the action of shipping

the excess cyanide constituted both a violation of federal regulation and a material

breach of the Contract. Based on the foregoing, Minosa gave Cyanco notice that

Cyanco was in breach of the Contract on March 30, 2023. After receiving no

response from Cyanco, Minosa sent a second notice on April 19, 2023, stating that

it was terminating the Contract with Cyanco effective May 19, 2023.

First, Cyanco contends in response that its alleged breach was not material

because there was no stoppage in sodium cyanide shipments, meaning Minosa's

ordinary course of business was not disrupted. Minosa contends that once they

---

[7] *See Defendant's Motion for Summary Judgment*, Document No. 17, Exhibit A.

became aware of a violation of the EAR, Minosa was no longer able to lawfully order any additional sodium cyanide from Cyanco under the applicable regulations, thus excusing further performance by Minosa. Cyanco offers no rebuttal. A plain reading of the applicable federal regulation is clear, with 15 C.F.R. § 764.2(e) providing that "[n]o person may order, buy, . . . use, . . . in whole or in part, or conduct negotiations to facilitate such activities . . . with knowledge that a violation of ECRA, the EAR, or any order, license, or authorization issued thereunder, has occurred, is about to occur, or is intended to occur in connection with the item." Considering the applicable regulation and the undisputed facts in the record, the Court finds that no genuine issue of material fact exists with regards to whether Cyanco materially breached the Contract, as Cyanco shipped in excess of the Export License limits, and Minosa had clear directions from the EAR that they were no longer permitted to purchase from Cyanco after discovering Cyanco had violated the terms of their Export License.

Second, Cyanco contends that Minosa failed to allow Cyanco the opportunity to cure their alleged breach, referencing for the Court the Contract's language stating their ability to "remedy such breach within thirty (30) days after its receipt of written notice detailing the breach from the non-breaching party."[8] Cyanco further contends

---

[8] *Plaintiff's Response to Defendant's Motion for Summary Judgment*, Document No. 21 at Ex. A-1 at 2 *(the Contract)*.

9

that its subsequent acquisition of a new export license cured its failure to maintain the initial export license. In response, Minosa offers a plethora of authority for the proposition that a failure to maintain something amounts to an incurable breach of contract in similar contexts where that failure resulted in a violation of the law.[9] Cyanco offers no caselaw or legal argument to the contrary. Considering the fact that Cyanco's failure to maintain the Export License, in and of itself, resulted in a violation of federal law, the Court finds that Cyanco's breach of the Contract was incurable.[10]

---

[9] *See Fed. Eng'rs v. Relyant Glob., LLC*, 2022 LEXIS 241879, at \*15 (E.D. Tenn. 2022) (holding that a party does not have a right to retroactively cure a violation of the law); *AgTech Sci., LLC v. Blue Circle Dev., LLC*, 2020 WL 1975375, at \*4 (E.D. Ky. 2020) (finding a failure to maintain licenses and conduct business in compliance with the law amounted to incurable breach that permitted termination of contract); *D&D Realty Trust v. Borgeson*, 2015 WL 5098626 (Mass. Dist. Ct. 2015) (finding that an intermittent failure to insure property was a material breach); *Kyung Sik Kim v Idylwood, N.Y., LLC*, 886 N.Y.S.2d 337 (1st Dep't 2009) (finding that tenants could not cure failure to continuously maintain insurance coverage, because prospective insurance coverage for the remaining lease term would not protect the owner against claims arising during period of non-coverage); *Las Americas, Inc. v. American Indian Neighborhood Dev. Corp.*, 2004 WL 2710061 (Minn Ct. App. 2004) (finding that a failure to maintain liability insurance could not have been corrected by tenant by paying insurance premiums or obtaining coverage after the fact).

[10] Minosa also notes for the Court that Cyanco failed to inform Minosa that it had obtained a new export license until June 19, 2023, several months after Minosa sent the required thirty-day written notice of its intent to terminate the contract. Cyanco offers no justification other than stating "nothing in the Sales Contract required Cyanco to provide MINOSA with a copy of its export license for shipping sodium cyanide." *Plaintiff's Response to Defendant's Motion for Summary Judgment*, Document No. 21 at 11.

Cyanco offers no other basis upon which to survive Minosa's motion for summary judgment. Based on the foregoing, the Court finds that Minosa has proffered summary judgment evidence such to show there is no genuine issue of material fact remaining in this matter. Accordingly, the Court finds that the Court's prior order should be vacated, and Minosa's motion for summary judgment should be granted.

## IV. CONCLUSION

Based on the foregoing, the Court hereby

**ORDERS** that the Court's prior order denying Defendant's Motion for Summary Judgment (Document No. 23) is hereby **VACATED**. The Court further

**ORDERS** that Defendant Minerales De Occidente, S.A. De C.V.'s Motion for Summary Judgment, (Document No. 17) is **GRANTED**. The Court further

**ORDERS** that Defendant's requested declaratory judgment, pursuant to the Federal Declaratory Judgment Act, is hereby **GRANTED** as follows: (1) Cyanco failed to maintain an export license to ship cyanide as required by the Contract; (2) Cyanco's failure to maintain an export license to ship cyanide to the constituted an incurable breach of the Contract; (3) Minosa had no obligation to continue ordering cyanide from Cyanco during the period after Cyanco allowed the license to lapse; (4) Based on Cyanco's failure to maintain an export license to ship cyanide, (5) Minosa had the right to terminate the Contract; (6) Minosa did not breach the

11

Contract; (7) Minosa did not repudiate the Contract; and (8) Minosa validly terminated the Contract effective May 19, 2023.

**THIS IS A FINAL JUDGMENT.**

SIGNED at Houston, Texas, on this __11__ day of March, 2025.

DAVID HITTNER
United States District Judge